# In the United States District Court for the Southern District of Georgia Waycross Division

```
ELIAS LEVI MOORE,

     Plaintiff,
                                          5:25-CV-54
v.

ANDERSON INTERNATIONAL CORP.,
and CROWN IRON WORKS COMPANY
n/k/a CROWN IRON WORKS
COMPANY, LLC,

     Defendants.
```

### ORDER

Before the Court is Defendant Anderson International Corporation's motion to dismiss, dkt. no. 5. The motion has been fully briefed and is ripe for review. Dkt. Nos. 5, 5-1, 29, 34. For the reasons set forth below, the Court **DENIES** Defendant's motion to dismiss.

### BACKGROUND[1]

This is a personal injury tort action stemming from an explosion at a peanut oil plant in Douglas, Georgia. Dkt. No. 1-1 ¶¶ 1, 6. Plaintiff alleges that he was working as a maintenance technician at the Premium Peanut Oil Plant ("Premium Peanut") when

---

[1] When evaluating a motion to dismiss, the Court must "accept all factual allegations in a complaint as true and take them in the light most favorable to [the] plaintiff[.]" Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246 (11th Cir. 2016).

he was severely burned by a fire in the discharge chute of a cooker used to extract peanut oil. Id. ¶ 8. Plaintiff is suing Defendants Anderson International Corporation ("Anderson") and Crown Iron Works Company ("Crown") for designing, installing, and commissioning the Cooker and associated processes and components which Plaintiff alleges led to his injuries. Id. ¶ 9.

## I. The Oilseed Processing Mill

According to Plaintiff's complaint, Anderson contracted with Premium Peanut for the design and implementation of an oilseed processing mill (the "Mill"). Id. ¶ 10. Under this agreement, Anderson allegedly undertook the following responsibilities in the 2017 to 2018 timeframe:

- Design and implement the oilseed processing mill with all necessary equipment, instructions, warnings, controls, alarms, procedures, and processes;
- Provide complete equipment layout, piping and instrumentation, process flow, and process narrative;
- Design and supply all items in Anderson's proposal;
- Provide technical and engineering services, such commissioning install equipment and teaching Premium Peanut personnel how to use the equipment and processes; and
- Provide on-site technical support.

Id. ¶¶ 10–13. Anderson's processing mill design included a cooker used to extract peanut oil (the "Cooker"), alongside a "discharge hopper or chute" which aided in the disposal of excess organic peanut material. Id. ¶¶ 8, 14, 21. Anderson selected a cooker that was designed and manufactured by Crown. Id. ¶ 14. Crown then supplied the Cooker, played an active role in both the equipment commissioning process and plant startup procedures, and provided a manual with instructions and warnings regarding the Cooker's operation. Id.

## II.   The First Smolder Fire and Remedial Measures

In early March 2018, Premium Peanut experienced a smolder fire in the discharge chute, allegedly due to the propensity for organic peanut material to get stuck in the chute and ignite. Id. ¶ 19. But Plaintiff alleges that neither Crown nor Anderson gave Premium Peanut training on how to handle the situation. Id. ¶¶ 16–18. In fact, Plaintiff alleges that Crown and Anderson both failed to instruct Premium Peanut on how to avoid fires after a normal shutdown period and what to do in the event of a fire during startup or following a shutdown. Id.

On the day of the fire, representatives from Crown and Anderson were present at the plant to assist with equipment commissioning. Id. ¶ 19. However, Plaintiff claims that, rather than remedying the underlying issue of peanut material becoming lodged in the chute, Crown and Anderson merely removed and disabled

3

the safety system temperature monitoring. Id. ¶¶ 21-22. This removal left a small hole where the temperature probe had been. Id. ¶ 27.

Following the fire, Crown and Anderson still had not provided Premium Peanut with a means to efficiently access and clean peanut material from the discharge chute, so Premium Peanut added an access door on the chute to serve this purpose. Id. ¶¶ 23-24. Plaintiff alleges that Crown knew about this discharge access door from inspections and service visits after the door's installation. Id. ¶ 24. But, despite Crown and Anderson allegedly knowing that this door was a problem, neither did anything to remedy the problem or otherwise warn Premium Peanut of the safety hazard. Id.

### III. Plaintiff's Injury and the Present Action

On September 5, 2023, Premium Peanut began startup procedures at the Mill, and operators noticed a glow emanating through the hole left by the temperature probe's removal. Id. ¶ 27. Plaintiff, who worked as a maintenance technician, was tasked with addressing the issue. Id. He proceeded to discharge a fire extinguisher into the hole, which appeared to extinguish the fire. Id. ¶ 28. But then, Plaintiff opened the door on the discharge chute and additional air entered the chute, causing fire to shoot out at Plaintiff, engulfing him in flames. Id. ¶ 29. Plaintiff was severely burned. Id.

4

Following the incident, Plaintiff filed suit on May 12, 2025 in the Superior Court of Coffee County, Georgia, seeking monetary relief from both Crown and Anderson. Id. ¶¶ 50; id. at 10. Specifically, Plaintiff sued Crown and Anderson for strict products liability (Count I), negligence in design, manufacture, and maintenance (Count II), and failure to warn (Count III). Id. ¶¶ 32-51. Defendants removed the case to this Court. Dkt. No. 1. Anderson then moved to dismiss all three Counts against it under Federal Rule of Civil Procedure 12(b)(6), arguing Plaintiff failed to state a claim upon which relief can be granted. Dkt. Nos. 5, 5-1.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint is not required to include "detailed factual allegations," the federal rules require more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[L]abels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. (quoting Twombly, 550 U.S. at 555).

Federal courts employ a "plausibility standard" to discern whether a claim can withstand a motion to dismiss for failure to

5

state a claim, meaning "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

To decide whether a complaint should withstand a motion to dismiss, the Court must accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016) (citing Ironworkers Local Union 68 v. AstraZeneca Pharms., LP, 634 F.3d 1352, 1359 (11th Cir. 2011)). But legal conclusions are not afforded the same assumption of truth. Iqbal, 556 U.S. at 678–79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. And the Court need not "accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A complaint will not survive a motion to dismiss if it merely recites the elements of the claim and declares that they are met. Iqbal, 556 U.S. at 678–79. Instead, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500

6

F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Well-pleaded facts that "nudge" a claim for relief "across the line from conceivable to plausible" are crucial to pass this procedural threshold. Twombly, 550 U.S. at 547. Ultimately, the factual allegations must be sufficient to "permit the Court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 678.

## DISCUSSION

### I. Plaintiff plausibly alleges a claim for strict products liability.

To state a claim for strict liability under Georgia law, a plaintiff must show that "(1) the defendant was manufacturer of the product; (2) the product, when sold, was not merchantable and reasonably suited to the use intended, and (3) the product's defective condition proximately caused plaintiff's injury." Henderson v. Sun Pharm. Indus., Ltd., No. 4:11-CV-0060-HLM, 2011 WL 4024656, at *5 (N.D. Ga. June 9, 2011) (citing Chicago Hardware & Fixture Co. v. Letterman, 510 S.E.2d 875, 877 (Ga. Ct. App. 1999)); see also O.C.G.A. §§ 51-1-11, 51-1-11.1(b). An entity is a "manufacturer" if it assumes an "active role in the production, design, or assembly" of products. Buchan v. Lawrence Metal Prods., Inc., 607 S.E.2d 153, 156 (Ga. Ct. App. 2004) (citing Alltrade v. McDonald, 445 S.E.2d 856 (Ga. Ct. App. 1994)). Anderson takes issue with the first pleading requirement, arguing that Plaintiff failed

7

to specifically allege Anderson's status as an *actual manufacturer* of the Cooker—rather than a "product seller" that cannot be sued under a strict liability theory. Dkt. No. 5-1 at 5. Anderson's argument does not yet carry the day.

Anderson is correct in that a plaintiff pursuing a strict liability claim must clarify a defendant's role in a product's creation. Brazil v. Janssen Rsch. & Dev., LLC, 249 F. Supp. 1321, 1337 (N.D. Ga. 2016) (dismissing strict liability claim where complaint "provide[d] no notice of what role any of the Defendants played"). But "[n]othing in Rule 8(a), Twombly, Iqbal, or any other binding precedent requires a plaintiff to specifically plead facts that establish every element" in order to state a strict liability claim. Edwards v. Wisc. Pharmacal Co., LLC, 987 F. Supp. 2d 1340, 1345–46 (N.D. Ga. 2013). Rather, the primary inquiry at this juncture is whether the complaint provides notice of the role a defendant allegedly played in the creation of the product or system at issue. Brazil, 249 F. Supp. at 1321. General statements or vague labels, without more, do not suffice. Id. (dismissing for failure to sufficiently allege strict liability claim where complaint, without further detail, alleged defendants "designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed sold, and distributed [the disputed product]").

8

Plaintiff alleges that Defendants Anderson and Crown "designed, manufactured, distributed, and sold the Cooker and associated components, including the discharge chute, in a defective and unreasonably dangerous condition." Dkt. No. 1-1 ¶¶ 33-34. Plaintiff also avers that the defective design and inadequate safety features failed to protect users, like Plaintiff, from the very type of burn injuries he suffered. Id. ¶ 34. And, even further, Plaintiff incorporates into Count I all preceding paragraphs in the complaint, many of which speak to Anderson's involvement in the Premium Peanut Mill's development. Id. ¶ 32.

Plaintiff's allegations are sufficient to state a claim for strict liability under Georgia law. First, Plaintiff very plainly alleges that the Cooker and related components were "manufactured" by one (or both) of the Defendants. Id. ¶ 33. Second, the factual backdrop incorporated into Plaintiff's strict liability claim provides adequate notice of Anderson's role in designing the system. Id. ¶ 32. Rather than relying solely on general labels to identify the parties, Plaintiff's factual support outlines the exact responsibilities Anderson had in the design, proposal, implementation, and maintenance of the Cooker and associated components. Id. ¶ 32. After all, it is the "Cooker *and associated components*" that allegedly caused Plaintiff's injuries, and Plaintiff asserts that Anderson designed, coordinated, and

9

commissioned that integrated system. Id. ¶¶ 6-31, 33; see also Buchan, 607 S.E.2d at 156-57 (reversing grant of summary judgment in defendant's favor where defendant "had a real role" in a system's creation, and plaintiff alleged that it was the *system*, rather than just one component thereof, that caused the injury). Thus, because Anderson has sufficient notice of its alleged role as a "manufacturer" of the Cooker and associated components in the Mill's collective system, Plaintiff states a plausible claim for strict products liability.

The bulk of Anderson's argument in support of its motion to dismiss Count I focuses on whether Plaintiff's allegations show Anderson *actually* manufactured the Cooker or played a real role in the design of "associated components," such as the discharge chute. See generally, Dkt. No. 5-1. But this argument is premature. A plaintiff facing a motion to dismiss a products liability claim need not specifically plead all details surrounding the defect's source in the complaint. Edwards, 987 F. Supp. 2d at 1345-46. This is, in part, because "[t]he very nature of a products liability action – where the cause or source of the defect is not obvious to the consumer – [makes] it difficult for [a plaintiff] to pinpoint a specific source of defect." Bailey v. Janssen Pharm., Inc., 288 F. App'x 597, 605 (11th Cir. 2008). That being so, the dispute over whether Anderson is a manufacturer versus a product seller is better suited for resolution at a later stage in the litigation

10

process. See, e.g., Dean v. Toyota Indus. Equip. Manu., Inc., 540 S.E.2d 233, 235–36 (Ga. Ct. App. 2000) (reversing grant of summary judgment because a factual dispute existed regarding whether defendant was a manufacturer or product seller); Thomasson v. Rich Prods. Corp., 502 S.E.2d 289, 290–91 (Ga. Ct. App. 1998) (analyzing whether defendant was a manufacturer or product seller to discern whether directed verdict was proper); see also Edwards, 987 F. Supp. at 1346 ("[T]here is a difference between the evidence needed to survive a motion for summary judgment or judgment as a matter of law and what must be alleged to satisfy Rule 8(a)." (quoting Damian v. Montgomery Cnty. Bankshares, Inc., 981 F. Supp. 2d 1368, 1383 n.10 (N.D. Ga. 2013))). Because Plaintiff has met his pleading burden at this procedural posture, Anderson's motion to dismiss is **DENIED** as to Count I.

### II. Plaintiff plausibly alleges a claim for negligent design, manufacture, and maintenance.

In Georgia, a plaintiff injured by a defectively designed or manufactured product may also pursue a claim under a decisional-law negligence theory. Maynard v. Snapchat, Inc., 870 S.E.2d 739, 745–46 (Ga. 2022). Generally, to bring a negligence-based claim under Georgia law, a plaintiff must sufficiently plead four elements: "(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risk of harm; (2) a breach of this standard; (3) a legally

11

attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty." Berry v. Hamilton, 541 S.E.2d 428, 429–30 (Ga. Ct. App. 2000). Plaintiff claims negligence in the design, manufacture, and maintenance of the Cooker and its associated components. Dkt. No. 1-1 ¶¶ 37–40; Dkt. No. 29 at 17–18.

Plaintiff has met the pleading requirements for the existence of a legal duty. Anderson argues that the negligent design and manufacture claims against it must be dismissed because Anderson did not design or manufacture the Cooker in question, and, as a result, there existed no legal duty to be violated. Dkt. No. 5-1 at 7. However, as established above, Plaintiff's allegations identify Anderson as a manufacturer and provide sufficient factual support for this status. Dkt. No. 1-1 ¶ 37 (incorporating all preceding paragraphs into Count II, including those paragraphs providing for Anderson's role at the mill). To the extent Anderson takes issue with whether it actually had a legal duty regarding the Cooker and related equipment, this argument is premature. At the motion to dismiss stage, the factual allegations in the complaint are to be construed as true. Spirit Airlines, Inc., 836 F.3d at 1347 (citing Ironworkers Local Union 68, 634 F.3d at 1359). Plaintiff unequivocally states that Anderson was involved in the Mill's design and manufacturing process, dkt. no. 1-1 ¶¶ 10–13,

making it plausible that Anderson had a duty to conform to a standard of conduct.

Regarding the negligent maintenance allegations, Anderson claims that the complaint is "unequivocally silent as to any undertaking by Defendant Anderson for the maintenance of the cooker in question." That is not the case. Under Georgia law, even if a party is a product seller rather than a manufacturer, that party assumes a legal duty if it carries out further inspection or testing of its merchandise. Wilcher v. Redding Swainsboro Ford Lincoln Mercury, Inc., 3 S.E.2d 27, 33 (Ga. Ct. App. 2013). The complaint presents ample factual support for such an undertaking, detailing Anderson's involvement in the commissioning process; the prior smolder fire that occurred in the discharge chute while Anderson representatives were present for start-up testing; Anderson and Crown representatives' decision to remove the temperature probe rather than provide an alternative means to clean the discharge chute; and Anderson's purported failure to provide any further instruction or warnings after addressing that first fire. Dkt. No. 1-1 ¶¶ 19–25. In other words, Anderson employees allegedly helped with the Mill's maintenance to remedy an initial issue that arose. Id.

Finally, Plaintiff alleges the factual detail required to plead the remaining three elements of a negligent design, manufacture, and maintenance claim. First, Plaintiff specified how

13

both Defendants breached the three duties in connection with Plaintiff's burn injuries. Id. ¶¶ 37, 39. Plaintiff alleges that Anderson designed a system for Premium Peanut, the system involved a cooker hooked up to associated components, and that combined design posed an unreasonable risk of fire. Id. ¶¶ 10-14, 39. As noted above, Plaintiff sufficiently alleged the real role Anderson played in the "manufacturing" of the Mill system, specifically noting that Defendants' negligence stemmed from failure to warn and include appropriate safety features. Id. ¶¶ 10–18, 39. And the complaint specifies alleged negligence in Anderson's maintenance of the Cooker and associated components, claiming that Anderson and Crown completely failed to remedy the underlying design issue that caused peanut remnants to catch fire. Id. ¶¶ 18–24, 39. This suffices to state a plausible claim for negligence in design, manufacture, and maintenance, and Anderson's motion to dismiss is **DENIED** as to Count II.

### III. Plaintiff plausibly alleges a claim for failure to warn.

In Georgia, a manufacturer's duty to warn is "continuous, even after that product has left the control of the manufacturer to be sold or distributed to the consumer." Suzuki Motor of Am., Inc. v. Johns, 830 S.E.2d 549, 557 (Ga. Ct. App. 2019). On the other hand, sellers need only warn of dangers "actually or constructively known at the time of sale." Jennings v. TJX Co., No. 1:22-cv-35-JRH, 2024 WL 4255344, at *13 (S.D. Ga. Sept. 20,

14

2024) (quoting DeLoach v. Rovema Corp., 527 S.E.2d 882, 883 (Ga. Ct. App. 2000)). A plaintiff pursuing a failure to warn claim must plausibly show that a "defendant had a duty to warn, defendant breached that duty, and defendant's breach proximately caused plaintiff's injury." Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010).

Anderson first advocates for dismissal of this claim based, again, on Plaintiff's alleged failure to plead that Anderson is a manufacturer. Dkt. No. 5-1 at 9–10. Under this theory, Plaintiff's claim would have to hinge on Anderson's knowledge at the time the Cooker and Mill system were sold to Premium Peanut. Jennings, 2024 WL 4255344, at *42. And, notwithstanding the dispute over Anderson's exact status, Anderson argues that "there is absolutely no allegation or fact regarding how the warnings or instructions were deficient." Dkt. No. 5-1 at 10.

Accepting the complaint's factual allegations as true, Plaintiff has plausibly alleged a failure to warn claim. Because Plaintiff sufficiently alleged that Anderson was a manufacturer, it would be plausible for Anderson to have a continuing duty to warn. Suzuki Motor of Am., Inc., 830 S.E.2d at 557. And, as was the case with the strict liability claim, to the extent courts applying Georgia law reject failure to warn claims based on the distinction between a product seller and a manufacturer, they often do so *after* the discovery process, as this gives parties a chance

15

to discern an entity's role and shed light on that entity's knowledge of alleged defects leading up to a plaintiff's injury. See, e.g., Buchan, 607 S.E.2d at 155–56 (reversing trial court's grant of summary judgment because defendant failed to show it was a "mere seller"); Jennings, 2024 WL 4255344, at *12–13 (analyzing, *at the summary judgment stage*, whether defendant was a manufacturer versus product seller and defendant's knowledge of alleged defects).

Finally, the factual allegations incorporated into this claim reveal why Plaintiff believes the warnings were deficient. Dkt. No. 1-1 ¶ 41. Plaintiff alleges that, after the initial smolder fire in the discharge chute and representatives' removal of the temperature probe from the Cooker, Premium Peanut added an access door on the discharge chute. Dkt. No. 1-1 ¶¶ 19–24. The complaint further alleges that Crown and Anderson carried out inspections after the access door was installed, learned of the door, knew it was a safety problem, and "did not warn Premium Peanut or its employees about the problem or call it to their attention." Id. ¶ 24. This gives Anderson adequate notice of how it purportedly violated this duty and surpasses the level of specificity required to withstand a motion to dismiss. Thus, the Court **DENIES** Anderson's motion to dismiss as to Count III.

**CONCLUSION**

The Court concludes that dismissal is improper. Accepting the factual allegations in the complaint as true and construing them in the light most favorable to Plaintiff, the complaint plausibly alleges claims against Defendant Anderson for strict liability; negligence in design, manufacture, and maintenance; and failure to warn. For these reasons, Anderson's motion to dismiss, dkt. no. 5, is **DENIED.**

**SO ORDERED** this 20th day of October, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA